**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH P. CAREY, SR.,**

               **Plaintiff,**

        **v.**

**COUNTY OF ALBANY,**

             **Defendant.**
_____

                                **1:14-cv-420**
                                **(GLS/CFH)**

**APPEARANCES:**                 **OF COUNSEL:**

**FOR THE PLAINTIFF:**
D'Orazio, Peterson Law Firm    GIOVANNA A. D'ORAZIO, ESQ.
125 High Rock Avenue         SCOTT M. PETERSON, ESQ.
Saratoga Springs, NY 12866

**FOR THE DEFENDANT:**
Albany County Attorney's Office   THOMAS MARCELLE
112 State Street, Suite 1010
Albany, NY 12207

**Gary L. Sharpe**
**Senior District Judge**

### MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Joseph Carey commenced this action against defendant

County of Albany alleging discrimination in violation of the Americans with

Disabilities Act[1] (ADA) and New York State Human Rights Law[2] (NYHRL). (Compl., Dkt. No. 1.)  Carey also alleges retaliation for engaging in protected activity in violation of these same statutes.  (*Id.*)  Pending is the county's motion for summary judgment.  (Dkt. No. 28.)  For the reasons that follow, the motion is granted.

## II.  **Background**[3]

Carey worked for the county since October 1982 starting as a corrections officer at the Albany County Correctional Facility.  (Def.'s Statement of Material Facts (SMF) ¶ 12, Dkt. No. 30.)  He served in different capacities with the county until he was eventually assigned to the Albany International Airport as a deputy sheriff, where he remained until January 2013.  (*Id.* ¶¶ 13-17.)

In January 2011, Carey sustained an on-the-job injury requiring neck surgery that was performed in February 2012.  (*Id.* ¶ 20.)  He was on medical leave from the surgery through April 2012.  (*Id.* ¶ 19.)  When Carey returned to work, the county provided him with a light duty assignment as a desk clerk at the emergency management division in

---

[1] *See* 42 U.S.C. §§ 12101-12213.

[2] *See* N.Y. Exec. Law §§ 290-301.

[3] Unless otherwise noted, the facts are not in dispute.

Cohoes until July 2012 while he was recuperating from the surgery. (*Id.* ¶ 21; Pl.'s SMF ¶¶ 152-54, Dkt. No. 34, Attach. 1.) In July 2012, Carey returned to his regular assignment as a deputy sheriff at the airport. (Def.'s SMF ¶ 22.)

Carey claimed that he suffered from either a transient ischemic attack (TIA) or a transient global amnesia (TGA), which are types of strokes, while on medical leave back in March 2012. (*Id.* ¶ 23.) As a result, he was hospitalized for three to four days and sought treatment from neurologist John Verdini. (*Id.* ¶¶ 24, 50.) In October 2012, Carey complained of cognitive difficulties and again sought treatment from Dr. Verdini. (*Id.* ¶ 51.) Dr. Verdini referred Carey to clinical neuropsychologist Michael Long who examined him on two occasions in December 2012. (*Id.* ¶¶ 52-53.)

Dr. Long reported that Carey "display[ed] significant residual cognitive disturbances." (Dkt. No. 28, Attach. 8 at 4.) He "partially attribut[ed Carey's condition] to a mild traumatic brain injury in [January 2011]" and opined that "[r]esidual effects of that trauma seem[ed] magnified by small vessel disease including an apparent TIA [in March 2012]." (*Id.*) Dr. Long further opined that Carey's "experienced difficulties

3

seem[ed] primarily neurogenic in nature." (*Id.*) Ultimately, he recommended that "[c]onsideration should be given to reassignment to light duty desk work to accommodate significant cognitive limitations including slowed processing speed." (*Id.* at 4-5.) Carey also testified that Dr. Long informed him after his neuropsychological testing that he "could no longer carry a firearm" and "need[ed] a desk job" if he could not afford to retire. (Dkt. No. 28, Attach. 7 at 30.) In addition, Dr. Long submitted a declaration in this action summarizing his report. (Dkt. No. 28, Attach. 9.) In it, he noted that "Carey's actual abilities could only be ascertained in an empirical, trial and error fashion within the Albany County Sheriff's Office, but [the report] suggested that he would perform most adequately in controlled circumstances in which he could perform single activities sequentially in a quiet, non-distracting environment." (*Id.* ¶ 6.) After Carey was treated by Dr. Long, he again sought treatment with Dr. Verdini who also issued a report opining that Carey was "unable to perform his current duties as an armed law enforcement officer" and recommended that he be placed on light duty assignment. (Dkt. No. 34 at 4-5.)

On January 10, 2013, Carey brought Dr. Long's report to work at the airport. (Def.'s SMF ¶ 72.) After appearing distressed to his supervisor

4

Captain Douglas Vogel, Captain Vogel invited Carey into his office along with Lieutenant Doug Buzzard to discuss the situation. (*Id.* ¶¶ 73-75.) Carey informed Captain Vogel and Lieutenant Buzzard about Dr. Long's findings regarding his cognitive abilities and expressed concerns about carrying a firearm. (*Id.* ¶ 78; Pl.'s SMF ¶¶ 76-77, Dkt. No. 34, Attach. 1.) Carey then punched out for the day and returned home. (Def.'s SMF ¶ 79.) Captain Vogel informed his superior Undersheriff William Cox about the meeting with Carey and Lieutenant Buzzard. (*Id.* ¶ 80.)

Carey subsequently returned to work in civilian clothes without a firearm. (*Id.* ¶¶ 81, 83.) Captain Vogel notified him that a meeting was scheduled to discuss his medical situation with Sheriff Craig Apple, Undersheriff Cox, Chief Paul Courcelle, Captain Vogel, and himself. (*Id.* ¶¶ 82, 86.) Undersheriff Cox reviewed Dr. Long's report in anticipation of the meeting. (*Id.* ¶ 84.) At his deposition, Carey testified that before the scheduled meeting, Captain Vogel told him that he was a liability and should retire. (Pl.'s SMF ¶ 128.)

On January 16, 2013, all parties met, and Carey explained that he had been diagnosed with a neurologic condition which precluded him from carrying a firearm. (Def.'s SMF ¶ 87.) Carey, who was fifty-two years old

at the time, requested to be "put . . . somewhere behind a desk until [he] turned [fifty-five]." (*Id.*) After the meeting, the Sheriff's Office directed Carey to take a week off from work. (*Id.* ¶ 90.) Carey testified that Captain Vogel told him after the meeting that the Sheriff's Office was "going to take care of [him, but did not] know where [it was] going to plug [him] in." (Dkt. No. 28, Attach. 7 at 61; Def.'s SMF ¶ 130; Pl.'s SMF ¶ 130.) Carey then applied for worker's compensation benefits as well as benefits under N.Y. General Municipal Law § 207-c. (Def.'s SMF ¶ 88.)

After the January 16th meeting, Undersheriff Cox contacted Jennifer Clement, the county's human resources representative, about Carey's light duty request. (Pl.'s SMF ¶ 132.) He learned from her that the county would deny the request because it was contesting Carey's worker's compensation claim, arguing that his injury was not work related. (*Id.*) It is the county's policy and practice to deny light duty requests if it is disputed whether the employee was injured while on duty. (*Id.* ¶¶ 144-45.) The county does have light duty positions available, however, it asserts that these positions are temporary and transitional in nature. (*Id.* ¶¶ 149-51; Def.'s Supplemental SMF ¶¶ 149-51, Dkt. No. 36, Attach. 1.)

Undersheriff Cox advised Sheriff Apple and Captain Vogel of the

county's position. (Pl.'s SMF ¶¶ 133, 135.) Some time after, Undersheriff Cox exchanged an email with Clement stating that Carey had "a reputation as a hypercondriac [sic] with[in] the Sheriff's Office." (Dkt. No. 34 at 9; Pl.'s SMF ¶ 142.) On January 30, 2013, Carey sent a letter to Sheriff Apple formally requesting that he be "reassigned to a modified desk job" as a result of the "[r]eports of Drs. Long and Verdinni [sic]." (Dkt. No. 28, Attach. 18 at 2.) Sheriff Apple denied the request, citing the county's challenge to Carey's worker's compensation claim. (Dkt. No. 28, Attach. 19 at 2; Def.'s SMF ¶ 95.)

Subsequently, Carey informed Sheriff Apple that he would be retiring from the Sheriff's Office effective February 28, 2013. (Dkt. No. 28, Attach. 20.) Sheriff Apple acknowledged Carey's retirement notice and thanked him for his thirty years of service. (Dkt. No. 28, Attach. 21.) Sometime in February 2013, Carey attended a party hosted by the Police Conference of Northeastern New York, congratulating him on his retirement. (Def.'s SMF ¶ 103.) Carey currently receives social security disability and state disability retirement. (*Id.* ¶¶ 118-20.) As of February 2015, Carey also worked as a part-time driver delivering auto parts. (*Id.* ¶ 122.)

Sometime in 2012, Carey contacted New York State to determine whether his eight years as a corrections officer were eligible towards his retirement pension. (*Id.* ¶¶ 104-05.) In February or March 2013, Carey received a letter from the state notifying him that he was awarded 30.3 years towards his retirement, which included the years Carey served as a corrections officer. (*Id.* ¶ 107.) His first pension check reflected this amount. (*Id.* ¶¶ 108-09.) The next month, in April 2013, the state contacted Carey and informed him that they had miscalculated his years of service. (*Id.* ¶¶ 110-11.) As a result, his years as a corrections officer were no longer retirement pension eligible, and Carey received approximately ten thousand dollars less per year. (*Id.* ¶¶ 106, 111.)

Shortly thereafter, Carey filed a complaint with the United States Equal Employment Opportunity Commission alleging retaliation and discrimination under the ADA. (Dkt. No. 28, Attach. 2 at 4-7.) In April 2014, the EEOC sent Carey a right to sue letter. (Dkt. No. 28, Attach. 4.) Then, on April 15, 2014, Carey commenced this action against the county. (*See generally* Compl.)

### III. <u>Standard of Review</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here.  For a full discussion of the

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.*

*Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

### A.    Reasonable Accommodation[4]

The county argues that Carey cannot meet his burden to prove that

he could perform the essential functions of a deputy sheriff, such as

carrying a firearm, with or without a reasonable accommodation.  (Dkt.

No. 29 at 4-9.)  The county also asserts that it sufficiently engaged in an

interactive process with Carey to accommodate him, but, in any event,

failure to do so is not actionable.  (*Id.* at 16-18.)  Carey counters that

factual disputes remain over whether he could perform the essential

functions of the position.  (Dkt. No. 34, Attach. 2 at 5-11.)  Specifically,

Carey contends that the court should evaluate whether he could perform

the essential functions of a desk job within the Sheriff's Office rather than

---

[4] "Aside from the broader scope of covered disabilities under New York Executive Law § 296, [a plaintiff's] state law reasonable accommodation claim is 'governed by the same legal standards as federal ADA claims.'" *Cody v. Cty. of Nassau*, 345 F. App'x 717, 719 (2d Cir. 2009) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004).  For that reason, unless otherwise noted, the court analyzes Carey's parallel state discrimination claim along with his ADA claim.

an active duty deputy sheriff.  (*Id.* at 6-7.)  In addition, Carey asserts that factual issues exist regarding whether the county failed to provide a reasonable accommodation because light duty positions were available that would not place an undue burden upon the county.  (*Id.* at 13-16.) Finally, Carey argues that the county failed to sufficiently engage in an interactive process which is actionable under state law.  (*Id.* at 16-20.)

An employer may be liable under the ADA where it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A); *see McBride v. BIC Consumer Prod. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009).  To make a prima facie showing of an employer's failure to accommodate, a plaintiff must establish that "1) he was an individual who has a disability within the meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation."  *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 102 (2d Cir. 2010) (internal quotation marks and citation omitted); *see Brown v. State Univ. of N.Y.*, No. 3:12-cv-411, 2015 WL 729737, at *7 (N.D.N.Y. Feb. 19, 2015).

"An accommodation is reasonable 'if its costs [and burdens on the employer] are not clearly disproportionate to the benefits that it will produce.'" *Fowler v. Kohl's Dep't Stores, Inc.*, No. 1:07-CV-1197, 2009 WL 2155481, at *5 (N.D.N.Y. July 16, 2009) (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)). At the same time, "'an employer is not required to accommodate an individual with a disability by eliminating essential functions of the job.'" *Id.* (quoting *Borkowski*, 63 F.3d at 140).

"'[T]he identification of the essential functions of a job requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice.'" *Id.* (quoting *Borkowski*, 63 F.3d at 140). "Under guidelines accompanying EEOC regulations enacted pursuant to the ADA, courts are instructed to first determine 'whether the employer actually require[d] employees in the position to perform the functions that the employer asserts are essential.'" *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 101 (2d Cir. 2003) (quoting 29 C.F.R. § 1630.2(n)). "If so, 'the inquiry will then center around whether removing the function would fundamentally alter that position.'" *Id.* (quoting 29 C.F.R. § 1630.2(n)). "[C]ourt[s] must give considerable deference to an

employer's judgment regarding what functions are essential." *Rodal v. Anesthesia Grp of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004) (internal quotation marks and citations omitted). "But ultimately, the question whether a task constitutes an essential function depends on the totality of the circumstances." *Id.* at 120.

The only disputed element is whether Carey could perform the essential functions of his job. At the outset, Carey contends that the court should look to whether he could perform the essential functions of a desk clerk within the Sheriff's Office. (Dkt. No. 34, Attach. 2 at 6-7.) Carey, however, relies on readily distinguishable authority for this proposition. In *Stone v. City of Mount Vernon*, 118 F.3d 92, 93 (2d Cir. 1997), a disabled firefighter requested an accommodation to be assigned to the Fire Alarm Bureau, a permanent, light duty unit. *See* 118 F.3d at 93. The Second Circuit found that the district court should have analyzed the essential functions of a firefighter assigned to that bureau rather than an active firefighting bureau. *See id.* at 99. Here, no such permanent positions exist for deputy sheriffs and, thus, *Stone* is distinguishable. (Def.'s SMF ¶ 156; Dkt. No. 28, Attach. 14 ¶¶ 14-17.) For that reason, the court must only evaluate whether Carey could perform the essential functions of a

deputy sheriff.

To determine the essential functions, courts may look to evidence such as job descriptions, the time spent performing certain job duties, and the employer's judgment regarding the importance of certain functions. *See* 29 C.F.R. § 1630.2(n)(3); *see also Stone*, 118 F.3d at 97.  Among other requirements, the job description of a county deputy sheriff states that "[c]andidate[s] must be eligible to carry a firearm at [the] time of appointment and throughout employment."  (Dkt. No. 28, Attach. 15 at 2.) Undersheriff Cox testified to the same.  (Dkt. No. 28, Attach. 6 at 11.) Additionally, deputy sheriffs are called to "[k]eep[] records and make[] reports" as well as exercise "[g]ood judgment" and possess "[g]ood powers of observation."  (Dkt. No. 28, Attach. 15 at 2.)  The county's policy for members assigned to patrol requires that they "must always be alert for potential hazards and . . . dangers."  (Dkt. No. 28, Attach. 16 at 4.)  Specifically, at the Albany International Airport, where Carey was assigned, deputy sheriffs had to be knowledgeable about federal, state, and local procedures for handling bomb threats and security issues at screening points, on the aircrafts, and throughout the terminal.  (Dkt. No. 28, Attach. 17 at 3.)  Finally, in his declaration, Undersheriff Cox

stated that essential functions of deputy sheriffs included: "the ability to remember events and circumstances necessary for keeping records and making reports; the ability to effectively carry out arrests; the ability to safely and effectively respond to emergency situations; the ability to receive, apprehend, and remember orders of various kinds; and the ability to carry a firearm." (Dkt. No. 28, Attach. 14 ¶ 10.)

Carey contends that it is disputed whether these duties are essential functions of a deputy sheriff, citing the county's willingness to find light duty positions for individuals injured on the job pursuant to N.Y. General Municipal Law § 207-c. (Pl.'s SMF ¶¶ 28-33.) Carey, however, misapprehends the law as it relates to the ADA. "[T]here is no requirement under the ADA that defendants create a new light duty position." *Hudson v. W. N.Y. Bics. Div.*, 73 F. App'x 525, 529 (2d Cir. 2003); *see King v. Town of Wallkill*, 302 F. Supp. 2d 279, 291 (S.D.N.Y. 2004) ("An employer is not . . . obligated to create a new light-duty position for a disabled employee or make permanent previously temporary light-duty positions."). Here, it is undisputed that a vacant permanent, light duty position did not exist when Carey made his request. (Dkt. No. 28, Attach. 5 at 29; Dkt. No. 28, Attach. 7 at 65; Dkt. No. 28, Attach.

14

14 ¶ 13.)  In fact, the Sheriff's Office does not employ any deputy sheriff to serve in a permanent, light duty capacity.  (Dkt. No. 28, Attach. 14 ¶¶ 14-17.)  Consequently, the county had no obligation to create Carey's requested accommodation.  *See Hudson*, 73 F. App'x at 529; *King*, 302 F. Supp. 2d at 291.  Because Carey does not challenge the county's proof on any other basis, there is no actual dispute over the essential functions of a deputy sheriff.  *Cf. McMillian v. City of N.Y.*, 711 F.3d 120, 126-27 (2d Cir. 2013) (denying summary judgment where a dispute remained over whether the plaintiff's timely arrival to work was an essential function of her job because her tardiness had been implicitly approved and the employer permitted a "flex-time policy" allowing "all employees to arrive and leave within one-hour windows").

Here, Carey has failed to make the requisite showing that he could perform the essential functions of a deputy sheriff with or without an accommodation.  *See McBride*, 583 F.3d at 96-97.  By his own admission, Carey could not perform at least some of the duties of a deputy sheriff, namely, carrying a firearm or making arrests.  (Def.'s SMF ¶¶ 34, 48-49; Pl.'s SMF ¶ 34.)  In addition, Carey concedes that he had trouble with his short term memory, which impacted writing reports, following through with

15

orders, and remembering to be prepared with the proper equipment or paperwork. (Def.'s SMF ¶¶ 35-40, 43-44, 47.) Carey also testified that his reaction time and ability to process information had slowed. (*Id.* ¶¶ 42, 45.) Finally, Carey indicated that stress exacerbated his impairments. (*Id.* ¶ 46.) The reports of Drs. Long and Verdini corroborate Carey's testimony. (Dkt. No. 28, Attach. 8; Dkt. No. 34 at 4-5.) Furthermore, Carey has failed to identify an accommodation short of a permanent light duty assignment that would allow him to perform as a deputy sheriff. *See McBride*, 583 F.3d at 97 ("An ADA plaintiff does not satisfy h[is] burden to identify a potential accommodation merely by reciting the formula that h[is] employer could have reassigned h[im]."). Because Carey has not raised a genuine issue of fact on any element of his disability discrimination claims, *see Wagner*, 827 F. Supp. 2d at 92, the court grants summary judgment in the county's favor.

To that end, Carey's argument that summary judgment should be denied because the county failed to engage in an interactive process also fails. Under the ADA, "failure to engage in an interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible." *McBride*, 583 F.3d at 100. Assuming

without deciding that the county failed to engage in an interactive process, here, as discussed above, Carey has not provided any evidence that such an accommodation was possible. Although the NYHRL has a more demanding standard in this regard, *see Jacobsen v. N.Y. City Health & Hosps. Corp.*, 22 N.Y.3d 824, 837 (2014), the facts compel the same result because Carey's requested accommodation was limited to a permanent light duty position, which was patently unreasonable.

Finally, Carey contends that the county has a "100% healed policy" which violates the ADA. (Dkt. No. 34, Attach. 2 at 11-12.) Carey, however, fails to adduce any proof of a county policy aside from his own testimony that Captain Vogel told him to return to work "one hundred percent." (Dkt. No. 28, Attach. 7 at 62); *cf. EEOC v. Yellow Freight Sys.*, No. 98 CIV. 2270, 2002 WL 31011859, at *20 (S.D.N.Y. Sept. 9, 2002) (holding an explicit policy requiring that an employee may only return to work without physical restrictions violated the ADA). Accordingly, this argument likewise fails.

## B.    Retaliation[5]

---

[5] The "NYHRL contain[s] similar provisions against retaliation and [is] governed in this respect by the same standards as the ADA." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). For that reason, unless otherwise noted, the court analyzes Carey's parallel state retaliation claim along with his ADA claim.

The county contends that Carey cannot sufficiently allege retaliatory action because there is no causal link between Carey's request for a light duty assignment and his alleged forced retirement. (Dkt. No. 29 at 19-21.) Carey argues that he requested this reasonable accommodation, which was denied, and then, in retaliation for that request, was forced into retirement. (Dkt. No. 34, Attach. 2 at 23-24.) Carey contends that factual questions remain regarding causation. (*Id.* at 24.) Specifically, Carey highlights the temporal proximity between his request and his "forced retirement" as well as Captain Vogel and Undersheriff Cox's animus against his request. (*Id.*)

To defeat a motion for summary judgment on a retaliation claim, a plaintiff must demonstrate:

> [1] that [he] engaged in protected participation or opposition under [the ADA], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.[6]

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (internal quotation marks and citation omitted). However, "the

---

[6] Courts use the Title VII framework to evaluate retaliation claims under the ADA. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001).

prima facie case establishes only a rebuttable presumption of retaliation."
*El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010) (citation
omitted).  The burden of production then shifts to the employer to present
a legitimate non-retaliatory reason for the adverse employment action.
*See Treglia v. Town of Manlious*, 313 F.3d 713, 721 (2d Cir. 2002).  "If the
[employer] provides such an explanation, the presumption of retaliation
dissipates, and the plaintiff must prove that the desire to retaliate was the
but-for cause of the challenged employment action."  *Ya-Chen Chen v.
City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (internal quotation marks
and citation omitted).[7]

The parties appear to contend that the only element at issue in the
prima facie analysis is whether a causal connection existed between
Carey's request for a light duty assignment and his alleged forced
retirement.  (Dkt. No. 29 at 19-21; Dkt. No. 34, Attach. 2 at 22-25.)  The
court, however, takes issue with another element: the county's purported
adverse action.  Essentially, Carey argues that the county took adverse

_____

[7] Although it remains an open question in the Second Circuit, *see Wesley-Dickinson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 745 n.3 (2d Cir. 2014), other circuits and district courts within this circuit have applied the but-for standard found in Title VII retaliation claims to ADA retaliation claims, *see Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 348-49 (E.D.N.Y. 2014) (collecting cases), rather than the less demanding motivating factor standard, *see Wesley-Dickinson*, 586 F. App'x at 746.  The court, however, need not resolve this issue because Carey fails to demonstrate any basis for his claim.

action against him by denying his accommodation request and forcing him into retirement because he could not perform his job as a deputy sheriff. As reasoned above, the court determined that Carey could not perform the essential functions of that position. The county correctly recognizes that Carey's argument is circular. (Dkt. No. 29 at 20.) A plaintiff cannot assert that he is unable to perform a job, even with a reasonable accommodation, and, at the same time, claim his employer retaliated against him by preventing him from performing that job. *See Sheahan v. Dart*, No. 13-cv-9134, 2015 WL 1915246, at *6 (N.D. Ill. Apr. 23, 2015) (finding that "because the protected activity [p]laintiff alleges he engaged in *was* requesting accommodations, the denial of such requests can hardly be considered unlawful retaliation for the act of requesting them."); *see also Pagliaroni v. Daimler Chrysler Corp.*, No. 04-C-1213, 2006 WL 2668157, at *9 (E.D. Wis. Sept. 15, 2006). Because Carey cannot demonstrate adverse action on the part of the county, his retaliation claim fails.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the county's motion for summary judgment (Dkt.

20

No. 28) is **GRANTED**; and it is further

      **ORDERED** that Carey's complaint (Dkt. No. 1) is **DISMISSED**; and it

is further

      **ORDERED** that the Clerk close this case; and it is further

      **ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

July 28, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge